Eastern District of Kentucky
**F I L E D**

OCT 0 8 2015

AT COVINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

UNITED STATES OF AMERICA

v.

KEIJI KYOMOTO,
MIKIO KATSUMARU, and
YUJI KURODA,

                    Defendants.

INDICTMENT NO. 15-44-ART-CJS
15 U.S.C. § 1

The Grand Jury charges:

Background

At times relevant to this Indictment:

1.      COMPANY A was a corporation organized and existing under the laws of Japan with its principal place of business in Hiroshima, Japan. COMPANY B was a joint venture, partially owned by COMPANY A, organized and existing under the laws of Delaware, with offices in Topeka, Indiana, and Novi, Michigan. COMPANY A and COMPANY B were engaged in the business of manufacturing and selling automotive body sealing products to Honda Motor Company, Ltd., Toyota Motor Corporation, and certain of their subsidiaries and affiliates (collectively, "Automobile Manufacturers") for installation in vehicles manufactured and sold in the United States and elsewhere. Toyota Motor Corporation had a U.S. subsidiary located in Erlanger, Kentucky that was responsible for purchasing automotive body sealing products to be installed into Toyota vehicles.

2.      Defendant KEIJI KYOMOTO was a citizen of Japan and resided in the United States. KYOMOTO was employed as Vice President of COMPANY B from at least as early as September 2003 until in or about April 2004, and as President of COMPANY B from in or about April 2004 until at least October 2011.

3.      Defendant MIKIO KATSUMARU was a citizen and resident of Japan. KATSUMARU was employed by COMPANY A as a sales branch manager and Deputy Manager of the Sales and Marketing Division from at least as early as September 2003 until in or about July 2005, as Sales General Manager of the Automotive Division from in or about July 2005 until in or about March 2008, and as Manager of the Sales and Marketing Division from in or about March 2008 until at least October 2011. KATSUMARU was a Director of Company A from at least as early as September 2003 until in or about March 2008, and a Managing Director of Company A from in or about March 2008 until at least October 2011.

4.      Defendant YUJI KURODA was a citizen and resident of Japan. KURODA was employed by COMPANY A as a sales branch manager from at least as early as September 2003 until at least October 2011.

5.      Automotive body sealing products consist of body-side opening seals, door-side weather-stripping, glass-run channels, trunk lids, and other smaller seals. Automotive body sealing products are installed into automobiles to keep the interior dry from rain and free from wind and exterior noises.

6.      COMPANY A, COMPANY B, and their co-conspirators supplied automotive body sealing products to Automobile Manufacturers for installation in vehicles manufactured and sold in the United States and elsewhere. COMPANY A, COMPANY B, and co-conspirators manufactured automotive body sealing products (a) in the United States for installation in

2

vehicles manufactured and sold in the United States; (b) in the United States for installation in vehicles manufactured in Canada that were imported into and sold in the United States; and (c) in Japan for installation in vehicles manufactured in Japan that were imported into and sold in the United States.

7.      When purchasing automotive body sealing products, Automobile Manufacturers typically issued Requests for Quotation ("RFQs") to suppliers on a model-by-model basis for model-specific parts. Automotive body sealing product suppliers submitted quotations, or bids, to Automobile Manufacturers in response to the RFQs, and Automobile Manufacturers awarded the contract to the selected supplier for the lifespan of the model, usually four to six years. Typically, the bidding process began approximately three years prior to the start of production of the model that is the subject of the RFQ.

8.      Other corporations and individuals, not made defendants in this Indictment, participated as co-conspirators in the offense charged in this Indictment and performed acts and made statements in furtherance of it.

9.      Whenever in this Indictment reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or other representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

Conspiracy to Restrain Trade

10.      From at least as early as September 2003 and continuing until at least October 2011, the exact dates being unknown to the Grand Jury, in Kenton County, in the Eastern District of Kentucky, and elsewhere,

KEIJI KYOMOTO,
MIKIO KATSUMARU, and

3

YUJI KURODA,

defendants herein, along with others known and unknown to the Grand Jury, knowingly joined

and participated in a combination and conspiracy to suppress and eliminate competition in the

automotive parts industry, in unreasonable restraint of interstate and foreign trade and commerce

in violation of Section 1 of the Sherman Antitrust Act (15 U.S.C. § 1).

11.     The charged combination and conspiracy consisted of a continuing agreement,

understanding, and concert of action among the Defendants and their co-conspirators, the

substantial terms of which were to allocate sales of, to rig bids for, and to fix, stabilize, and

maintain prices of automotive body sealing products sold to Automobile Manufacturers in the

United States and elsewhere.

12.     Pursuant to his managerial role at COMPANY B, Defendant KYOMOTO

instructed and encouraged certain of COMPANY B's employees under his supervision, directly

and indirectly, to communicate with co-conspirators at other companies in order to allocate sales

of, rig bids for, and fix, stabilize, and maintain the prices of automotive body sealing products;

was aware certain employees engaged in such communications; and condoned such

communications.  KYOMOTO also attended meetings in the United States with co-conspirators

at another company during which KYOMOTO and co-conspirators discussed and reached

agreements regarding sales of automotive body sealing products to Automobile Manufacturers in

the United States.

13.     Pursuant to his managerial role at COMPANY A, Defendant KATSUMARU

instructed and encouraged certain of COMPANY A's employees under his supervision, directly

and indirectly, to communicate with co-conspirators at other companies in order to allocate sales

of, rig bids for, and fix, stabilize, and maintain the prices of automotive body sealing products;

4

was aware certain employees engaged in such communications; and condoned such communications. KATSUMARU also instructed and encouraged certain of COMPANY A's employees to destroy evidence of the conspiracy.

14.     Pursuant to his managerial role at COMPANY A, Defendant KURODA instructed and encouraged certain of COMPANY A's employees under his supervision, directly and indirectly, to communicate with co-conspirators at other companies in order to allocate sales of, rig bids for, and fix, stabilize, and maintain the prices of automotive body sealing products; was aware certain employees engaged in such communications; and condoned such communications. KURODA also instructed and encouraged certain of COMPANY A's employees to destroy evidence of the conspiracy.

### Manner and Means of the Conspiracy

15.     For the purpose of forming and carrying out the charged combination and conspiracy, the Defendants and their co-conspirators did those things that they combined and conspired to do, including, among other things:

(a)     participating in, and directing, authorizing and consenting to the participation of subordinate employees in, meetings, conversations, and communications with employees of competitor companies to discuss the bids and price quotations to be submitted to Automobile Manufacturers in the United States and elsewhere;

(b)     in such meetings, conversations, and communications with employees of competitor companies, agreeing on, exchanging information on, and directing, authorizing and consenting to subordinate employees agreeing on and exchanging information on, bids, price quotations, and price adjustments to be submitted to Automobile Manufacturers in the United States and elsewhere;

5

(c)     in such meetings, conversations, and communications with employees of competitor companies, agreeing to, and directing, authorizing, and consenting to subordinate employees agreeing to, allocate sales of automotive body sealing products sold to Automobile Manufacturers in the United States and elsewhere;

(d)     submitting, and directing, authorizing and consenting to subordinate employees submitting, bids, price quotations, and price adjustments to Automobile Manufacturers in the United States and elsewhere, in accordance with their agreements with employees of competitor companies;

(e)     selling automotive body sealing products to Automobile Manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

(f)     accepting payment for automotive body sealing products sold to Automobile Manufacturers in the United States and elsewhere at collusive and noncompetitive prices; and

(g)     employing measures to conceal their conduct, including, but not limited to, using code when referring to co-conspirator companies, meeting at restaurants, directing subordinates to destroy evidence, and destroying evidence of the conspiracy.

## Trade and Commerce

16.     During the period covered by this Indictment, the Defendants and their co-conspirators sold to Automobile Manufacturers in the United States and elsewhere substantial quantities of automotive body sealing products manufactured in the United States and shipped from other states, and manufactured outside the United States and assembled in vehicles imported into the United States, all in a continuous and uninterrupted flow of interstate and import trade and commerce. In addition, substantial quantities of equipment and supplies

6

necessary to the production and distribution of automotive body sealing products by COMPANY A, COMPANY B, and co-conspirators, as well as payments for automotive body sealing products sold by COMPANY A, COMPANY B, and co-conspirators, traveled in interstate and import trade and commerce. The business activities of the Defendants and their co-conspirators in connection with the production and sale of automotive body sealing products that were the subject of the charged conspiracy were within the flow of, and substantially affected, interstate and import trade and commerce.

ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

A TRUE BILL

FOREPERSON

Dated: 10/8/15

BRENT SNYDER
Acting Assistant Attorney General

MARVIN N. PRICE, JR.
Director of Criminal Enforcement
Antitrust Division
U.S. Department of Justice

FRANK J. VONDRAK
Chief, Chicago Office

ANDRE M. GEVEROLA, IL Bar No. 6281457
  Assistant Chief
L. HEIDI MANSCHRECK, NY Bar No. 4537585
CHRISTINE M. O'NEILL, IL Bar No. 6300456
MATTHEW MCCROBIE, IL Bar No. 6309644
  Trial Attorneys
U.S. Department of Justice
Antitrust Division
Chicago Office
209 S. LaSalle St., Suite 600
Chicago, IL 60604
Tel.:  (312) 984-7200

## **PENALTIES**

Up to 10 years imprisonment, a $1,000,000 fine, and supervised release for not more than 3 years.

**PLUS:**        Mandatory special assessment of $100 per count.

**PLUS:**        Restitution, if applicable.