Eastern District of Kentucky
**FILED**

APR 20 2016

AT COVINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON**

**CRIMINAL ACTION NO. 15-44-ART-CJS**

**UNITED STATES OF AMERICA**     **PLAINTIFF**

**V.**     **BINDING PLEA AGREEMENT**

**KEIJI KYOMOTO**     **DEFENDANT**

\* \* \* \* \*

The United States of America and Keiji Kyomoto ("the defendant") hereby enter into the following Plea Agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."):

**RIGHTS OF DEFENDANT**

1. The defendant understands his rights:

    (a) to be represented by an attorney;

    (b) as a citizen and resident of Japan, to decline to accept service of the Summons in this case, and to contest the jurisdiction of the United States to prosecute this case against him in the United States District Court for the Eastern District of Kentucky;

    (c) to plead not guilty to any criminal charge brought against him;

    (d) to have a trial by jury, at which he would be presumed not guilty of the charge and the United States would have to prove every essential element of the charged offense beyond a reasonable doubt for him to be found guilty;

    (e) to confront and cross-examine witnesses against him and to subpoena witnesses in his defense at trial;

    (f)    not to be compelled to incriminate himself;

    (g)    to appeal his conviction, if he is found guilty; and

    (h)    to appeal the imposition of sentence against him.

## AGREEMENT TO PLEAD GUILTY AND WAIVE CERTAIN RIGHTS

2.    The defendant knowingly and voluntarily waives the rights set out in Paragraph 1(b)-(g) above. The defendant also knowingly and voluntarily waives the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2241 or 2255, that challenges the sentence imposed by the Court if that sentence is consistent with or below the recommended sentence in Paragraph 14 of this Plea Agreement, regardless of how the sentence is determined by the Court. This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b)-(c). Nothing in this paragraph, however, will act as a bar to the defendant perfecting any legal remedies he may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct. The defendant agrees that there is currently no known evidence of ineffective assistance of counsel or prosecutorial misconduct.

3.    The defendant will plead guilty to the criminal charge described in the Indictment, a conspiracy in restraint of trade in violation of 15 U.S.C. § 1, and will make a factual admission of guilt to the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 5 below.

## ELEMENTS OF THE OFFENSE CHARGED

4. The elements of a violation of Section One of the Sherman Antitrust Act, 15 U.S.C. § 1, to which the defendant will plead guilty, are as follows:

(a) a conspiracy that amounted to an unreasonable restraint of trade or commerce among the several States or with foreign nations was knowingly formed, and existed at or about the time alleged, that is, from at least as early as September 2003 until at least October 2011;

(b) the defendant knowingly entered into the conspiracy; and

(c) either acts taken in furtherance of the conspiracy were in the flow of interstate or foreign commerce, or the conspirators' general business activities infected by the conspiracy substantially affected interstate or foreign commerce.

## FACTUAL BASIS FOR OFFENSE CHARGED

5. Had this case gone to trial, the United States would have presented evidence sufficient to prove the following facts beyond a reasonable doubt, and the defendant admits these facts:

(a) For purposes of this Plea Agreement, the "relevant period" is that period from at least as early as September 2003 until at least October 2011. During the relevant period, the defendant was employed by Company A, a corporation organized and existing under the laws of Japan, with its principal place of business in Hiroshima, Japan; and Company B, a joint venture partially owned by Company A, organized and existing under the laws of Delaware, with offices in Topeka, Indiana, and Novi, Michigan. During the relevant period, Company A and Company B were engaged in the business of manufacturing and selling automotive body sealing products to Honda Motor Company,

Ltd., Toyota Motor Corporation, and certain of their subsidiaries and affiliates (collectively, "Automobile Manufacturers") for installation in vehicles manufactured and sold in the United States and elsewhere. Automotive body sealing products consist of body-side opening seals, door-side weather-stripping, glass-run channels, trunk lids, and other smaller seals. Automotive body sealing products are installed into automobiles to keep the interior dry from rain and free from wind and exterior noises. During the relevant period, the defendant was employed as the Vice President of Company B from at least as early as September 2003 until in or about April 2004; and as the President of Company B from in or about April 2004 until at least October 2011. During the relevant period, Company B's sales of automotive body sealing products affecting Automobile Manufacturers in the United States totaled at least $300 million.

(b) During the relevant period, the defendant participated in a conspiracy with other persons and entities engaged in the manufacture and sale of automotive body sealing products, the primary purpose of which was to suppress and eliminate competition in the automotive parts industry by agreeing to allocate sales of, to rig bids for, and to fix, stabilize, and maintain the prices of automotive body sealing products sold to Automobile Manufacturers in the United States and elsewhere. In furtherance of the conspiracy, the defendant engaged in discussions and attended meetings with representatives of other entities involved in the manufacture and sale of automotive body sealing products. During such discussions and meetings, agreements were reached to allocate sales of, to rig bids for, and to fix, stabilize, and maintain the prices of automotive body sealing products sold to Automobile Manufacturers in the United States and elsewhere. Pursuant to his managerial role at Company B, the defendant gave certain

of Company B's employees under his supervision permission, directly and indirectly, to communicate with co-conspirators at other companies in order to allocate sales of, rig bids for, and fix, stabilize, and maintain the prices of automotive body sealing products; was aware certain employees engaged in such communications; and approved pricing submitted to Automobile Manufacturers that, in some cases, he knew was in accordance with agreements reached with competitors.

(c) During the relevant period, automotive body sealing products sold by one or more of the conspirator entities, and equipment and supplies necessary to the production and distribution of automotive body sealing products, as well as payments for automotive body sealing products, traveled in interstate and import trade and commerce. The business activities of the conspirator entities in connection with the production and sale of automotive body sealing products that were the subject of the conspiracy were within the flow of, and substantially affected, interstate and import trade and commerce.

(d) Acts in furtherance of the conspiracy were committed in the Eastern District of Kentucky, Northern Division, and elsewhere. The conspiratorial meetings and discussions described above took place in the United States and elsewhere, and automotive body sealing products that were the subject of the conspiracy were sold by one or more of the conspirators to a Toyota Motor Corporation subsidiary located in Erlanger, Kentucky.

## POSSIBLE MAXIMUM SENTENCE

6. The defendant understands that the statutory maximum penalty which may be imposed against him upon conviction for a violation of Section One of the Sherman Antitrust Act, 15 U.S.C. § 1, is:

(a) a term of imprisonment for ten (10) years (15 U.S.C. § 1);

(b) a fine in an amount equal to the greatest of (1) $1 million, (2) twice the gross pecuniary gain the conspirators derived from the crime, or (3) twice the gross pecuniary loss caused to the victims of the crime by the conspirators (15 U.S.C. § 1; 18 U.S.C. § 3571(b) and (d)); and

(c) a term of supervised release of three (3) years following any term of imprisonment. If the defendant violates any condition of supervised release, the defendant could be required to serve up to two (2) years in prison (18 U.S.C. § 3559(a)(3); 18 U.S.C. § 3583(b)(2) and (e)(3); and United States Sentencing Guidelines ("U.S.S.G.," "Sentencing Guidelines," or "Guidelines") §5D1.2(a)(2)).

7. In addition, the defendant understands that:

(a) pursuant to U.S.S.G. §5E1.1 or 18 U.S.C. § 3663(a)(3) or 3583(d), the Court may order him to pay restitution to the victims of the offense; and

(b) pursuant to 18 U.S.C. § 3013(a)(2)(A), the Court is required to order the defendant to pay a $100 special assessment upon conviction for the charged crime.

## SENTENCING GUIDELINES

8. The defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider, in determining and imposing sentence, the Guidelines Manual in effect on the date of sentencing unless that Manual provides for greater

punishment than the Manual in effect on the last date that the offense of conviction was committed, in which case the Court must consider the Guidelines Manual in effect on the last date that the offense of conviction was committed. The parties agree there is no *ex post facto* issue under the November 1, 2015, Guidelines Manual. The Court must also consider the other factors set forth in 18 U.S.C. § 3553(a), in determining and imposing sentence. The defendant understands that the Guidelines determinations will be made by the Court by a preponderance of the evidence standard. The defendant understands that although the Court is not ultimately bound to impose a sentence within the applicable Guidelines range, its sentence must be reasonable based upon consideration of all relevant sentencing factors set forth in 18 U.S.C. § 3553(a). Pursuant to U.S.S.G. § 1B1.8, the United States agrees that self-incriminating information that the defendant provides to the United States pursuant to this Plea Agreement will not be used to increase the volume of affected commerce attributable to the defendant or in determining the defendant's applicable Guidelines range, except to the extent provided in U.S.S.G. § 1B1.8(b).

    9.    The United States and the defendant agree to the following Guidelines calculations:

    (a)    The November 1, 2015 edition of the Guidelines applies.

    (b)    The controlling Guideline applicable to the sole count charged is U.S.S.G. §2R1.1.

    (c)    The Guidelines fine range is one to five percent of the volume of commerce attributable to the defendant pursuant to U.S.S.G. §§2R1.1(b)(2) and (c)(1).

    (d)    Pursuant to U.S.S.G. §2R1.1(a), the base offense level is 12.

(e) The offense to which the defendant is pleading guilty involved participation in an agreement to submit non-competitive bids, within the meaning of U.S.S.G. §2R1.1(b)(1), which increases the offense level by 1.

(f) The volume of commerce attributable to the defendant within the meaning of U.S.S.G. §2R1.1(b)(2) is more than $300,000,000, which increases the offense level by 10.

(g) The defendant qualifies as a manager or supervisor and the criminal activity involved five or more participants. Consequently, the offense level is increased by 3 pursuant to U.S.S.G. §3B1.1(b).

(h) The resulting Offense Level before any reduction for acceptance of responsibility is 26.

10. The United States does not oppose a two-level reduction in the defendant's adjusted offense level, based upon the defendant's prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. The United States agrees to make a motion pursuant to U.S.S.G. §3E1.1(b) for an additional one-level reduction in recognition of the defendant's timely notification of his intention to plead guilty. If the Court grants a three-level reduction for acceptance of responsibility, the defendant's Total Offense Level will be 23. Based on a Total Offense Level of 23 and a Criminal History Category I, the Guidelines imprisonment range is 46 to 57 months.

11. The defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history or criminal history category could alter his offense level, if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

12.     The United States and the defendant agree that there exists no aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the Guidelines justifying a departure pursuant to U.S.S.G. §5K2.0.

13.     The United States and the defendant agree that with respect to the calculation of the advisory Guidelines range, no offense characteristics, Sentencing Guidelines factors, potential departures or adjustments as set forth in Chapters 2, 3, 4, or 5 of the Sentencing Guidelines will be raised, argued, or are in dispute, unless set forth in this Plea Agreement.

## SENTENCING AGREEMENT

14.     Pursuant to Fed. R. Crim. P. 11(c)(1)(C) and subject to the terms of this Plea Agreement, including the Sealed Supplement to the Plea Agreement, the United States and the defendant agree that the appropriate disposition of this case is, and agree to recommend jointly that the Court impose, a sentence requiring the defendant to pay to the United States a criminal fine of $20,000, payable in full within fifteen days after the date of judgment, and to serve a period of imprisonment of 18 months; with no period of supervised release, and no order of restitution ("the recommended sentence"). The defendant agrees that he will not request that he be allowed to serve any part of his sentence in home detention, intermittent confinement, or community confinement. The United States will not object to the defendant's request that the Court make a recommendation to the Bureau of Prisons that the Bureau of Prisons designate that the defendant be assigned to a Federal Minimum Security Camp (or one such specific Camp as the defendant may request prior to or at the time of his sentencing) to serve his sentence of imprisonment and that the defendant be released following the imposition of sentence to allow him to self-surrender to the assigned prison facility on a specified date after his sentencing. The

defendant understands that the Court will order him to pay a $100 special assessment pursuant to 18 U.S.C. § 3013(a)(2)(A) in addition to any fine imposed. The parties agree that the recommended sentence set forth in this paragraph is reasonable.

15. The United States and the defendant understand that the Court retains complete discretion to accept or reject the recommended sentence provided for in Paragraph 14 of the Plea Agreement.

(a) If the Court does not accept the recommended sentence, the United States and the defendant agree that the Plea Agreement, except for Paragraph 15(b) below, will be rendered void. Neither party may withdraw from this Plea Agreement, however, based on the type or location of the prison facility to which the defendant is assigned to serve his sentence.

(b) If the Court does not accept the recommended sentence, the defendant will be free to withdraw his guilty plea (Fed. R. Crim. P. 11(c)(5) and (d)). If the defendant withdraws his plea of guilty, this Plea Agreement, the guilty plea, and any statement made in the course of any proceedings under Fed. R. Crim. P. 11 regarding the guilty plea or this Plea Agreement or made in the course of plea discussions with an attorney for the government will not be admissible against the defendant in any criminal or civil proceeding, except as otherwise provided in Fed. R. Evid. 410. In addition, the defendant agrees that, if he withdraws his guilty plea pursuant to this subparagraph of this Plea Agreement, the statute of limitations period for any Relevant Offense, as defined in Paragraph 16 below, will be tolled for the period between the date of signature of this Plea Agreement and the date the defendant withdrew his guilty plea plus sixty (60) days.

## IMMIGRATION AGREEMENT

16.     Consistent with Fed. R. Crim. P. 11(b)(1)(O), as a non-citizen of the United States, the defendant recognizes that pleading guilty may have consequences with respect to his immigration status, including removal from the United States, denial of citizenship, and denial of admission to the United States in the future. Under federal law, a broad range of crimes are removable offenses, including the offense to which the defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status.

(a)     Subject to the terms of this Plea Agreement, including the Sealed Supplement to the Plea Agreement and Attachment A, and upon the Court's acceptance of the defendant's guilty plea and imposition of sentence in this case, the United States agrees not to seek to remove the defendant from the United States under Sections 238 and 240 of the Immigration and Nationality Act, 8 U.S.C. §§ 1228 and 1229a, based upon the defendant's guilty plea and conviction in this case, should the defendant apply for or obtain admission to the United States as a nonimmigrant (hereinafter referred to as the "agreement not to seek to remove the defendant"). The agreement not to seek to remove the defendant is the equivalent of an agreement not to exclude the defendant from admission to the United States as a nonimmigrant or to deport the defendant from the United States. (Immigration and Nationality Act, § 240(e)(2), 8 U.S.C. § 1229a(e)(2)).

(b)     The Antitrust Division of the United States Department of Justice has consulted with United States Immigration and Customs Enforcement ("ICE") on behalf of the United States Department of Homeland Security ("DHS"). ICE, on behalf of DHS

and in consultation with the United States Department of State, has agreed to the inclusion in this Plea Agreement of this agreement not to seek to remove the defendant, pursuant to Attachment A to this Plea Agreement. The Secretary of DHS has delegated to ICE the authority to enter this agreement on behalf of DHS.

(c) So that the defendant will be able to obtain any nonimmigrant visa that he may need to travel to the United States, DHS and the Visa Office, United States Department of State, have concurred in the granting of a nonimmigrant waiver of the defendant's inadmissibility, pursuant to Attachment A. This waiver will remain in effect so long as this agreement not to seek to remove the defendant remains in effect. While the waiver remains in effect, the Department of State will waive any denial, made on the basis of the defendant's guilty plea and conviction in this case, of the defendant's application for a nonimmigrant visa, and DHS will waive any denial, made on the basis of his guilty plea and conviction in this case, of his application for admission as a nonimmigrant. This nonimmigrant waiver applies only to applications for entry as a nonimmigrant. DHS does not agree to waive any grounds of removability on an application for an immigrant visa.

(d) This agreement not to seek to remove the defendant will remain in effect so long as the defendant:

    (i) acts and has acted consistently with the terms of this Plea Agreement, including the Sealed Supplement to the Plea Agreement;

    (ii) is not convicted of any felony under the laws of the United

States or any state, other than the conviction resulting from the defendant's guilty plea under this Plea Agreement or any conviction under the laws of any state resulting from conduct constituting an offense subject to this Plea Agreement; and

(iii)    does not engage in any other conduct that would warrant his removal from the United States under the Immigration and Nationality Act. The defendant understands that should the Antitrust Division become aware that the defendant has violated any of these conditions, the Antitrust Division will notify DHS. DHS will then determine, in consultation with the Antitrust Division, whether to rescind this agreement not to seek to remove the defendant.

(e)    The defendant agrees to notify the Assistant Attorney General of the Antitrust Division should the defendant be convicted of any other felony under the laws of the United States or of any state.

(f)    Should the United States rescind this agreement not to seek to remove the defendant because of the defendant's violation of a condition of this Plea Agreement, the defendant irrevocably waives his right to contest his removal from the United States under the Immigration and Nationality Act on the basis of his guilty plea and conviction in this case, but retains his right to notice of removal proceedings.

## REPRESENTATION BY COUNSEL

17.    The defendant has reviewed all legal and factual aspects of this case with his attorney and is fully satisfied with his attorney's legal representation. The defendant has thoroughly reviewed this Plea Agreement with his attorney and has received satisfactory explanations from his attorney concerning each paragraph of this Plea Agreement and alternatives available to the defendant other than entering into this Plea Agreement. After

13

conferring with his attorney and considering all available alternatives, the defendant has made a knowing and voluntary decision to enter into this Plea Agreement.

## VOLUNTARY PLEA

18.     The defendant's decision to enter into this Plea Agreement and to tender a plea of guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises, or representations other than the representations contained in this Plea Agreement, including the Sealed Supplement to the Plea Agreement and Attachment A. The United States has made no promises or representations to the defendant as to whether the Court will accept or reject the recommendations contained within this Plea Agreement.

## VIOLATION OF PLEA AGREEMENT

19.     The defendant agrees that, should the United States determine in good faith, during the period that any Federal Proceeding is pending, that the defendant has failed to abide by or has otherwise violated any provision of this Plea Agreement, including the Sealed Supplement to the Plea Agreement, the United States will notify counsel for the defendant in writing by personal or overnight delivery, email, or facsimile transmission and may also notify counsel by telephone of its intention to void any of its obligations under this Plea Agreement (except its obligations under this paragraph), and the defendant will be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, the substantive offenses relating to the investigation resulting in this Plea Agreement. The defendant agrees that, in the event that the United States is released from its obligations under this Plea Agreement and brings criminal charges against the defendant for any Relevant Offense, the statute of limitations period for such offense will be tolled for the period between the date of

14

signature of this Plea Agreement and six (6) months after the date the United States gave notice of its intent to void its obligations under this Plea Agreement.

20.  The defendant understands and agrees that in any further prosecution of him resulting from the release of the United States from its obligations under this Plea Agreement because of the defendant's violation of this Plea Agreement, any documents, statements, information, testimony, or evidence provided by him to attorneys or agents of the United States, federal grand juries, or courts, and any leads derived therefrom, may be used against him in any such further prosecution. In addition, the defendant unconditionally waives his right to challenge the use of such evidence in any such further prosecution, notwithstanding the protections of Fed. R. Evid. 410.

21.  The defendant agrees to and adopts as his own the factual statement contained in Paragraph 5 above. In the event that the defendant breaches this Plea Agreement, the defendant agrees that this Plea Agreement, including the factual statement contained in Paragraph 5 above, provides a sufficient basis for any possible future extradition request that may be made for his return to the United States to face the charge in the Indictment. The defendant further agrees not to oppose or contest any request for extradition by the United States to face the charge in the Indictment.

## ENTIRETY OF AGREEMENT

22.  This Plea Agreement, including the Sealed Supplement to the Plea Agreement and Attachment A, constitutes the entire agreement between the United States and the defendant concerning the disposition of the criminal charge in this case. This Plea Agreement, including the Sealed Supplement to the Plea Agreement and Attachment A, cannot be modified except in writing, signed by the United States and the defendant.

23.     The undersigned attorneys for the United States have been authorized by the Attorney General of the United States to enter this Plea Agreement on behalf of the United States.

24.     A facsimile or PDF signature will be deemed an original signature for the purpose of executing this Plea Agreement. Multiple signature pages are authorized for the purpose of executing this Plea Agreement.

## SIGNATURES

**Defendant:** I have read *(or have had read to me)* this entire plea agreement, including the Sealed Supplement to the Plea Agreement and Attachment A, in my native language and have discussed it with my attorney with the assistance of a translator. I am entering this agreement voluntarily and of my own free will. No threats have been made to me, nor am I under the influence of anything that could impair my ability to understand this agreement.

_____       Jan. 6, 2016
KEIJI KYOMOTO                            Date

**Defense Counsel:** I have read this plea agreement and concur in Defendant pleading in accordance with the terms of the agreement. With the assistance of a translator, I have explained this plea agreement, including the Sealed Supplement to the Plea Agreement and Attachment A, to Defendant, and to the best of my knowledge and belief, Defendant understands the agreement.

_____       Jan 6, 2016
Stephen Fishbein                               Date
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022-6069
Tel: (212) 848-4424
Counsel for Keiji Kyomoto

**United States Department of Justice:** I accept and agree to this plea agreement on behalf of the Assistant Attorney General for the United States Department of Justice, Antitrust Division.

_____       2/1/2016
Andre M. Geverola, IL Bar No. 6281457     Date
  Assistant Chief
L. Heidi Manschreck, NY Bar No. 4537585
Matthew McCrobie, IL Bar No. 6309644
Jesse Reising, IL Bar No. 6321368
  Trial Attorneys
U.S. Department of Justice
Antitrust Division
209 South LaSalle Street, Suite 600
Chicago, Illinois 60604
Tel: (312) 984-7229

US Dist Ct.

17

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

CRIMINAL ACTION NO. 15-44-ART-CJS

UNITED STATES OF AMERICA                                    PLAINTIFF

V.            <u>ATTACHMENT A TO PLEA AGREEMENT</u>

KEIJI KYOMOTO                                               DEFENDANT


WAIVER OF INADMISSABILITY FOR KEIJI KYOMOTO



*Office of the Principal Legal Advisor*

U.S. Department of Homeland Security
500 12th Street, SW
Mailstop - 5900
Washington, DC 20536

U.S. Immigration
and Customs
Enforcement

January 06, 2016

The Honorable Brent Snyder
Assistant Attorney General
Antitrust Division
U.S. Department of Justice
Washington, D.C.  20530

Re:  Waiver of Inadmissibility for Keiji Kyomoto

Dear Mr. Snyder:

Marvin Price of the Department of Justice (DOJ), Antitrust Division, has asked U.S. Immigration and Customs Enforcement (ICE), on behalf of the Department of Homeland Security (DHS), to agree to the inclusion of a provision in a plea agreement with Keiji Kyomoto that would relieve him of adverse immigration consequences of his impending conviction for the criminal violation of the Sherman Antitrust Law, 15 U.S.C. § 1. The requested provision would constitute a waiver of any grounds of inadmissibility for nonimmigrants under 8 U.S.C. § 1182(d)(3)(A) based solely on this plea agreement and conviction. The Secretary of Homeland Security has delegated to the Assistant Secretary of ICE the authority to give this concurrence on behalf of DHS. The Assistant Secretary has further delegated this authority to the Principal Legal Advisor.

Mr. Kyomoto is a citizen and national of the Japan residing in Japan. Kyomoto has held many sales and managerial positions within ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, a Japanese company with headquarters in Japan. Kyomoto served as Vice President and later President of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, a joint venture owned partly by ▓▓▓▓▓▓▓▓. According to Mr. Price, DOJ considers Kyomoto's cooperation to be critical to obtaining the evidence to induce other corporate and individual subjects to plead guilty and cooperate in the investigation into the conspiracy to suppress and eliminate competition in the automotive body sealing products industry. Furthermore, DOJ believes that Kyomoto poses no continuing threat to United States commerce, and no threat to take part in any future criminal activity. Mr. Price has advised ICE that Kyomoto is not readily subject to the jurisdiction of the United States, and his continued ability to travel to the United States as a nonimmigrant is a critical factor in securing his cooperation. The Directorate for Visa Services, Department of State (DOS), has concurred in the requested waiver. ICE has also received concurrence from U.S. Customs and Border Protection (CBP), Admissibility Review Office. Based on the Memorandum of Understanding between the Antitrust Division, United States Department of Justice and the Immigration and Naturalization Service, United States Department of Justice, Mr. Price's memorandum, and the CBP and DOS

Waiver of Inadmissibility for Keiji Kyomoto
Page 2

concurrences, I agree to Mr. Price's request on behalf of DHS. You may file this letter, or a copy, with the appropriate district court, as provided in 28 C.F.R. § 0.197.

Please note that when Kyomoto comes to the United States to enter his guilty plea, and again when he comes to serve his sentence, he does not qualify for admission as a nonimmigrant visitor for "business" on those particular trips. 8 U.S.C. § 1101(a)(15)(B). Therefore, Kyomoto will require parole on those occasions. ICE will gladly work with DOJ to authorize Kyomoto's parole into the United States for the trips related to this criminal proceeding. Ms. Stephanie Lytle at the Law Enforcement Parole Unit is the ICE point of contact for such public benefit parole requests. DOJ may contact Ms. Lytle at (703) 877-3236 to make parole arrangements for Kyomoto. For future trips, Kyomoto will be able to seek admission as a nonimmigrant with the 8 U.S.C. § 1182(d)(3) waiver granted as part of his plea agreement.

Sincerely,

Gwendolyn Keyes Fleming
Principal Legal Advisor